Jonathan P. Ibsen, Esq. (AZ Bar No. 023284)
Craig P. Cherney, Esq. (AZ Bar No. 027485)
**CANTERBURY LAW GROUP, LLP**
14300 N. Northsight Boulevard, Suite 129
Scottsdale, Arizona  85260
Office: (480) 240-0040
Fax: (480) 656-5966

*Counsel to the Debtor*
E-mail: JIbsen@clgaz.com

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| In re: | ) No. 19-09432-SHG |
|---|---|
| DENNIS C. NOWLIN, | ) **AMENDED CHAPTER 12 PLAN OF REORGANIZATION** |
| Debtor. | ) |

Dennis C. Nowlin, ("Debtor"), submits his Plan of Reorganization (the "Plan"), as follows:

### I. PRELIMINARY STATEMENT

The Debtor operates as a family farmer.  Since the Petition Date, he continues to operate as such, and will fund this Plan from its operations.  The Debtor derives his income from three principal sources: (a) CNA, LLC; (b) Dart Z, LLC;  and (c ) farming operations in his own name.  These three sources of funds will be used to fund this Plan.

### II. DEFINITIONS

Unless otherwise defined in this Plan, the terms used herein shall have the same meanings ascribed to them in the  Bankruptcy Code or the Bankruptcy Rules.

### III. SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS, THIS AMENDED PLAN AND THE DEBTOR'S POST-CONFIRMATION OPERATIONS

The Debtor submits future earnings or other future income to the supervision and control of the Court and Trustee for the execution of the plan. The provisions of this Plan are intended to bind all creditors under 11 U.S.C. § 1225. Failure to file an objection

can affect the creditors' rights as secured or unsecured creditors. The confirmation process will resolve any conflicts between allowed claims and amounts provided for in this Plan. **ANY CREDITOR** who disagrees with her treatment under the plan must file an objection to the Plan, or they will be bound by the terms of this Plan.

### A. Claims

Claims are divided into eight Classes, as follows:

#### 1. Administrative Claims

Holders of Administrative Claims consist solely of those payments owed to the Trustee by virtue of this case. In order to cover the cost of administration, the Trustee shall receive such percentage of each Plan payment as may be set and adjusted from time to time by the Attorney General pursuant to 28 U.S.C. § 586. Such percentage fee is estimated herein at five percent (5 %). Counsel for the Debtor was paid in full, pre-petition.

#### 2. Priority Claim – Arizona Dep't. of Revenue

Arizona Department of Revenue ("AZDOR") has asserted a priority claim in the amount of $7,469 for income taxes for the tax years 2012 through and inclusive of 2017 (the "AZDOR Claim"). To the extent that the AZDOR Claim is not paid in full through *pro rata* distributions under this Plan or through direct payments outside of this Plan, the unpaid balance of the $7,469, along with post-petition and post-confirmation interest shall not be discharged in accordance with 11 U.S.C. §§ 523(a)(1)(B)(ii) and 1228(a).

#### 3. Priority Claim – Internal Revenue Service

<u>The Debtor has payroll tax liabilities to the IRS resulting from his operation of a previous entity for tax years 2007-2009 in the amount of $157,000.</u>

#### 4. Secured Claim – Reliable Credit

Reliable Credit's Claim is secured by the Debtor's sole vehicle, a 2005 Chevy Corvette with over 80,000 miles. Reliable Credit filed Proof of Claim No. 3 on September 9, 2019 in the amount of $12,265.10. Unless objected to, or subject to other treatment as ordered by this Court, the claim of Reliable Credit deemed allowed as filed in its Proof of Claim and will be paid, in full, pursuant to the terms of the executory agreements related to each such claim. Executory agreements related to such claims are assumed pursuant to the Amended Plan.

#### 5. Secured Claim – US Bank, NA/Specialized Loan Services

The claim of SLS is secured by the real property constituting the Debtor's family farm (the "Property"). US Bank, NA/Specialized Loan Services ("SLS") filed Proof of Claim No. 4 ("POC 4") as a secured claim in the amount of $998,896.43 and a claim for

arrearges of $54,620 (the "SLS Arrearages"). Debtor objects to POC 4, and will file a Motion to Partially Reclassify POC 4 as partially secured in the amount of $475,000[1] (the "SLS Secured Claim"), the fair market value of the Property, and the remaining $523,896.47 be allowed as a Class 6 General Unsecured Claim (the "SLS GUC Claim"). This value is supported by the Broker's Opinion of Value, annexed hereto as Exhibit "A." The SLS Secured Claim will be paid in full prior to the 2047 maturity date of the original SLS loan documents. Interest will be paid on the SLS Secured Claim at the rate of 3%/year, and payments will be made according to the amortization schedule annexed hereto as Exhibit "B." SLS shall retain its lien on any of its collateral, until the SLS Secured Claim is paid in full. SLS's lien will be deemed relinquished upon such payment, and will effect a release of lien within ten (10) days of final payment of the SLS Secured Claim.

The SLS Arrearages will be paid, monthly through the Plan in the mount of $910/month. The SLS GUC Claim will be paid *pro rata*, with the remaining allowed Class 6 General Unsecured Claims.

6. Secured Claim – John Nieman

John Neiman ("Neiman") loaned the Debtor $70,000 secured by the Cytodyn shares (the "Neiman Secured Claim"). The Nieman Secured Claim will be paid at the rate of $1,000/month. Neiman shall retain his lien on any of his collateral, until the Nieman Secured Claim is paid in full. Nieman's lien will be deemed relinquished upon such payment, and will effect a release of lien within ten (10) days of final payment of the Nieman Secured Claim.

7. Claim of Douglas Payne

Douglas Payne ("Payne") has filed Proof of Claim No. 5 as a secured claim ("POC 5"), as amended, in the amount of $85,279.59. Debtor objects to POC 5 and will be filing its objection which will assert, *inter alia*, that: (a) there are no remaining monies owed to Payne; (b) the POC fails to attach any substantiating documents; and (c) any amounts sought are unsecured. To the extent that the Payne Objection determines the amount and classification of POC No. 5, POC No. 5 will be paid through the Plan as a Class 6 General Unsecured Claim, and receive, *pro rata*, 1/60th of its allowed claim each month.

8. General Unsecured Claims

General Unsecured Claims consist of any Claim that is not an Administrative Claim, a Secured Claim, or classified elsewhere. Holders of Claims in Class 6 are Impaired. Each allowed General Unsecured Claim will be paid through the plan, and receive, *pro rata*, 1/60th of their allowed claims each month.

---

1    Note, the Debtor initially valued the Property at $600,000 in his schedules, but the broker has since indicated that such value was unrealistic.

A.  **Sources of Funding**

The Debtor will fund the Plan from income from (a) CNA, LLC; (b) Dart Z, LLC; and (c) farming operations. Based on past performance and the Debtor's estimate of future earnings, it is anticipated that these three sources of funds will generate the following annually:

- CNA, LLC - $150,000 from custom and contract farming;
- Dart Z, LLC - $50,000 from growing cotton; and
- Farming/Stable Operations on the Property in Debtor's Name - $20,000.

Collectively, this annual income, on a monthly basis, will be sufficient to support the Plan Payment this Plan. Specifically, the monthly projected income will be $220,000.

B.  **Anticipated Monthly Plan Payments**

Based on the information contained in this Plan, the Debtor anticipates the following monthly Plan Payments:

| | |
|---|---|
| AZDOR | $ 125 |
| IRS | $ 500 |
| Reliable Credit | $ 400 |
| SLS Secured Claim | $2,155 |
| SLS Arrearages | $ 910 |
| Nieman Secured Claim | $1,000 |
| Payments to General Unsecured Creditors | $1,000 |

C.  **Timing of Payments**

It is anticipated that Confirmation should occur in sufficient time for Payments to commence on August 1, 2020. Any estimate of the timing of payments, whether filed with this Plan or as a supplement to this Plan that is filed later, is based upon as assumption that approved administrative expenses of the estate will be paid in full before payments begin to general unsecured creditors. If to the contrary, there are approved administrative expenses of the estate that are not paid in full by the time of the entry of the Order Confirming Plan, then all such administrative expenses shall be paid first, notwithstanding any provisions of this Plan to the contrary.

The duration of the plan shall be 60 months. The plan will terminate and Debtor will receive his discharge. The Plan must be completed in 60 months. The Amended

Plan will be implemented by the Debtor as described above, and in a manner consistent with the terms and conditions set forth herein and in the Confirmation Order.

## II. EFFECT OF THIS AMENDED PLAN ON CLAIMS, INTERESTS AND CAUSES OF ACTION

### A. Binding Effect

The provisions of this Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during this Case and its successors and assigns.

### B. Term of Injunctions or Stays

All injunctions or stays provided for in this Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until this Case is closed.

### C. EFFECTIVE DATE AND VESTING

The effective date of the plan shall be the date 30 days after the execution of the Order Confirming the Plan, unless otherwise provided in the Plan or the Order Confirming the Plan. Property of the estate shall vest in the Debtor upon confirmation. The property vesting in the Debtor under this subsection is free and clear of any claim or interest of any creditor provided for in the Plan, unless otherwise provided in the Plan or Order Confirming the Plan.

## III. LIQUIDATION ANALYSIS

Section 1225(a)(4) of the Bankruptcy Code requires that the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed non-priority unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under chapter 7 of this title on such date. This is commonly known as the liquidation test. An alternative to confirmation of

Debtor's Plan would be a distressed liquidation. In a Chapter 7 liquidation Debtor's nonexempt assets would be sold for cash, most likely at an auction sale. Given the values of such nonexempt assets as set forth on the statements and schedules, there would be less recoveries to creditors under such liquidation.

The Debtor has few non-exempt assets that have not been pledged to secure any liens, as follows: 10 Acres of Land & 5 Acres of Farmland $50,000; and restricted membership interests in CAN and Dart Z LLC. Presuming a 10% discount on this value for costs of sale and diminution of value because of a distressed sale, that would yield $45,000. Additionally, the Debtor has 50% restricted membership interests in CNA and Dart Z, LLC which have no sale value.

## IV. ADMINISTRATIVE PROVISIONS

### A. Retention of Jurisdiction

Notwithstanding confirmation, the Bankruptcy Court shall retain jurisdiction for all purposes permitted under applicable law, including, without limitation, the following purposes:

(i) To determine any motion, adversary proceeding, avoidance action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(i) To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(ii) To ensure distributions to holders of Allowed Claims are accomplished as provided in the Amended Plan;

(iii) To hear and determine objections to the allowance of Claims, whether filed, asserted or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(iv) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim provided, however, that the District Court shall have jurisdiction to estimate any Claim that cannot be estimated by the Bankruptcy Court;

(v) To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(vi) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Amended Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(vii) To hear and determine any application to modify the Plan, to remedy any defect or omission or reconcile any inconsistency in the Amended Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(viii) To hear and determine any Professional Fee Claims;

(ix) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Amended Plan, the Confirmation Order, or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(x) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Amended Plan, including any release or injunction provisions set forth herein or in the Amended Plan, or to maintain the integrity of the Amended Plan following consummation;

(xi) To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xii) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xiii) To enter a final decree closing the Chapter 11 Cases;

(xiv) To recover all assets of the Debtor and property of the Estates, wherever located;

(xv) To hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior orders; and

(xvi) To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code and other applicable law.

**B.  Governing Law**

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under the Plan shall be governed by the laws of the State of Arizona, without giving effect to principles of conflicts of law.

**C.  Effectuating Documents, Further Transactions**

The Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### D. Amendments

#### 1. Pre-confirmation Amendment

The Debtor may modify this Amended Plan, without leave of Court, at any time prior to the entry of the Confirmation Order.

#### 2. Post-confirmation Amendment Not Requiring Resolicitation

After the entry of the Confirmation Order, the Debtor may modify this Amended Plan to remedy any defect or omission, as may be necessary to carry out the purposes and effects of the Plan, provided: (i) the Debtor obtain Bankruptcy Court approval of such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment, or Distributions of any Class under the Plan.

#### 3. Post-confirmation Amendment Requiring Resolicitation

After the Confirmation Date and before the Effective Date of this Amended Plan, the Debtor may modify the Amended Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims provided: (i) the modified Amended Plan meets applicable Bankruptcy Code requirements; (ii) the Debtor obtain Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Debtor comply with section 1125 of the Bankruptcy Code with respect to the modified Amended Plan.

### E. Successors and Assigns

The rights, benefits, and obligations of any Person named or referred herein shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

DATED this 13th Day of May, 2020.

          **CANTERBURY LAW GROUP, LLP**

          By: /s/ Jonathan Ibsen
           JONATHAN P. IBSEN
           14300 N. Northsight Blvd., Suite 129
           Scottsdale, AZ 85260
           Attorney for Debtor  **-and-**

           /s/Dennis Nowlin
           Debtor